UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-615-H

**CAPITAL SPECIALTY INSURANCE CORP.**            **PLAINTIFF**

**V.**

**INDUSTRIAL ELECTRONICS, LLC**            **DEFENDANTS**
**AND**
**YURIY OSYKA**
**AND**
**INDUSTRIAL CONTROL SOLUTIONS, INC.**


**MEMORANDUM OPINION**

      This case involves a comprehensive general liability insurance policy that Plaintiff, Capitol Specialty Insurance Corp. ("Capitol"), issued to Defendant, Industrial Electronics, LLC ("Indel"). Capitol requests a declaration that it need not defend or indemnify Indel and Yuriy Osyka, an employee of Indel, for certain state law claims Industrial Control Solutions, Inc. ("ICS") has brought against them in Jefferson Circuit Court. Pending before the Court is Capitol's Motion for Summary Judgment. Because the Court determines that the insurance policy does not cover ICS's claims against Indel and Osyka, the Court will sustain Capitol's motion.

**I.**

      Between May of 2002 and March of 2003, Yuriy Osyka entered multiple employment agreements with ICS, a company that repairs various forms of electronics. These agreements provided the level of Osyka's compensation and, important to this case, included certain non-compete and confidentiality provisions. Under those provisions, if Osyka left ICS he was not to

compete against ICS for a period of at least two years and he was not to disclose any of ICS's proprietary information or trade secrets. By 2005 it was clear that there were problems in the employment relationship between ICS and Osyka. According to ICS, Osyka deleted important business documents from ICS's computers and took that information with him prior to leaving the company in October of 2005. These actions have given rise to a lawsuit filed by ICS against Osyka in 2007.[1]

Shortly after leaving ICS, Osyka went to work for Indel, a newly formed company that also repairs electronics. Before hiring Osyka, Indel consulted with counsel regarding the non-compete and trade secret provisions of the employment agreements between Osyka and ICS. That counsel informed Indel that the provisions were not enforceable because ICS had failed to adequately compensate Osyka under the agreements. After joining Indel, it is alleged that Osyka revealed confidential information, specifically customer and pricing lists, from ICS and that information was used to obtain new Indel customers. In 2008, ICS filed a second action in Jefferson Circuit Court ("the underlying complaint"), this time against both Indel and Osyka. It is this lawsuit for which Indel seeks a defense and indemnification from Capitol.

The underlying complaint raises three primary causes of action: (1) tortious interference with business relationships; (2) breach of contract; and (3) violation of KRS § 365.880. As to tortious interference, ICS alleges that Indel "intentionally and improperly utilized proprietary and trade secret information obtained from Defendant Osyka to the economic detriment of the Plaintiff and for their own economic benefit." Breach of contract is alleged only against Osyka on the basis that he "disseminated proprietary and trade secret information" to Indel in violation

---

[1] The 2007 lawsuit is not the subject of the disputed insurance coverage in this case, but is relevant to the discussion of the underlying facts and coverage issues.

of the employment agreements between ICS and Osyka. Finally, KRS § 365.880 prohibits the dissemination of trade secrets. The parties agree that all of these claims arise out of the alleged actions of Osyka in revealing customer lists and pricing information from ICS to Indel and Indel's subsequent use of that information. Specifically, Indel's use of that information has allegedly led two customers to switch from ICS to Indel. It appears that ICS also offers statements made on Indel's website regarding the repair of "obsolete" models as evidence of Osyka taking private information. ICS claims that it uses the same word, "obsolete," on its website to describe its repair specialty.

Indel asserts that Capitol must provide a defense to the underlying lawsuit and indemnify Indel for any award won by ICS under a comprehensive general liability insurance policy that Indel signed with Capitol on April 17, 2006. The policy was to run for a one year period, ending April 17, 2007. That policy covers specific types of injuries resulting from the actions of Indel, including "advertising injuries." However, as discussed below, there are specific exclusions to coverage that are important to this case.

## II.

This Court applies Kentucky law to interpret the insurance policy. Under Kentucky law, the Court looks at the policy as a whole and gives every provision its full meaning and operative effect. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries*, 82 S.W.3d 869, 875-76 (Ky. 2002). "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Id.* at 873. There are two "cardinal principles" to insurance contract interpretation in Kentucky: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and (2) exceptions and exclusions should be strictly construed to make insurance

3

effective." *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992). However, "strict construction [of exclusions] should not overcome plain, clear language resulting in a strained or forced construction." *Kemper*, 82 S.W.3d at 873-74. "[I]f any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions." *Id.* at 874. With these guiding principles in mind, the Court will now address each of the claims in the underlying complaint to determine whether coverage exists.

### III.

The first claim is for tortious interference with business relationships based on Indel's alleged intentional and improper use of ICS's proprietary and trade secret information. All parties agree that if there is coverage for this claim it arises from the policy's coverage of "advertising injuries." The policy provides that Capitol "will pay those sums that the insured [Indel] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The policy goes on to define some of those concepts:

> "Advertisement" means a notice that is broadcast or published to the general public or market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>     a.    Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>     b.    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered and advertisement.
> . . .
> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> . . .
>     d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> . . .

4

      f.      The use of another's advertising idea in your "advertisement"; or
      g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement"

### A.

The initial question for the Court, then, is whether the underlying complaint asserts an "advertising injury." The parties agree that the primary actions causing ICS's alleged damages are Indel's use of ICS's customer and pricing lists. At first blush, this does not appear to be an advertising injury. The use of the customer and pricing lists did not create "a notice that [was] broadcast or published to the general public or market segments about [Indel's] goods, products or services for the purpose of attracting customers or supporters." Moreover, there is no assertion that the advertisements of Indel slandered or libeled anyone or infringed upon another's copyright, trade dress or slogan. In fact, it does not appear that any "advertisements" caused ICS's alleged injuries. Rather, the injuries were caused by Indel's knowledge of ICS's proprietary information.

Kentucky courts have not specifically addressed whether use of trade secrets constitutes an "advertising injury." Consequently, Indel points the Court to numerous foreign courts holding that it does not. In *Holloway Sportswear, Inc. v. Transportation Ins. Co.*, 58 Fed. Appx. 172 (6th Cir. 2003), the Sixth Circuit applied Ohio law to a narrower policy language and found that misuse of customer lists was not an "advertising injury." *Id.* at 175. Likewise, in *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226 (11th Cir. 2004), the Eleventh Circuit applied similar Florida precedent to a policy and factual scenario very similar to this case and found that misappropriation of customer lists did not constitute an "advertising injury." As the court noted, "[a] confidential customer list is a trade secret, not an idea about advertising or an outward

5

expression of a business's style." *Id.* at 1234.

Indel counters with other foreign cases holding that misappropriation of customer and pricing lists can constitute an advertising injury. *See, e.g., Merchants Co. v. Am. Motorists Ins. Co.*, 794 F.Supp. 611 (S.D.Miss. 1992) (holding that misuse of customer lists constituted "advertising injury"). Primarily, Indel relies on *Sentex Systems, Inc. v. Hartford Acc. & Indem. Co.*, 93 F.3d 578 (9th Cir. 1996). There, the Ninth Circuit held that the use of customer lists, along with marketing techniques, methods of bidding jobs, and other inside and confidential information, constituted an "advertising injury." *Id.* at 580-81. However, the court specifically stated, "While we may agree with Hartford that the mere misappropriation of customer mailing lists, standing alone, may not bring a complaint within the scope of possible coverage for 'advertising injury' as 'misappropriation of advertising ideas,' it is clear that the scope of [the underlying] lawsuit was much broader." *Id.* Thus, *Sentex* may be distinguished from this case.

Indel further argues that ICS's claims are based on Indel's statements to customers that it had better prices and services than ICS and that these statements must be "advertisements." However, this is not the basis of ICS's claims. ICS does not complain that Indel competed against it, which is the very nature of asserting that one has better pricing and services than the competitor, but rather that Indel *unfairly* competed by misappropriating trade secrets such as customer and pricing lists. The fact that Indel claimed to have better prices and services than ICS, therefore, is not cause the alleged injury in this case. Likewise, Indel's argument that its use of the word "obsolete" on its website brings this under the rubric of "advertising injuries" is not persuasive. There is no allegation that using the word "obsolete" caused any injuries to ICS. If anything, ICS offers this fact merely to support its conclusion that Indel stole its confidential

information.  Because "the injury for which coverage is sought must be caused by the advertising itself," the use of the word "obsolete" does not require Capitol to defend or indemnify this suit. *Pizza Magia Intern., LLC v. Assurance Co. of Am.*, 447 F.Supp.2d 766, 773 (W.D.Ky. 2006) (quoting *Hyman v. Nationwide Mut. Fire. Ins. Co.*, 304 F.3d 1179, 1192 (11th Cir. 2002)).

Given the plain language of the policy and the well reasoned analysis of courts like the Sixth and Eleventh Circuits, the Court believes that Kentucky courts would not consider the misappropriation of customer and price lists to be an "advertising injury."

**B.**

Notwithstanding the Court's conclusions in Section A above, one cannot ignore the split of authorities on this issue and Kentucky's strong preference for finding coverage.  Other courts could question this Court's conclusion.  Consequently, the Court will assume that an "advertising injury" has been alleged and also analyze whether any coverage exclusions apply.

One of the many exclusions to coverage of advertising injuries is for "Infringement Of Copyright, Patent, Trademark Or Trade Secret."  The policy specifically excludes coverage of "[p]ersonal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  However, this exclusion does not apply to infringement, in your advertisement, of copyright, trade dress or slogan."  This provision clearly excludes coverage of the tortious interference with business relationships claim. The complaint specifically alleges that Indel "tortuously [*sic*] interfered with the business relationship between the Defendant Osyka and [ICS] *as they intentionally and improperly utilized proprietary and trade secret information* . . ."  As described above, the alleged injuries arise solely from Indel's use of ICS's customer and price lists and not from the use of any copyright, trade dress or slogan

7

in Indel's advertising. Therefore, the policy language quite clearly excludes the claimed injuries.

## IV.

The complaint contains two additional claims, neither of which requires Plaintiff to offer a defense or indemnification.

The second claim, breach of contract, is alleged only against Osyka. Indel asserts that because Osyka is not the named insured, this claim is irrelevant to Capitol's duties. However, as Capitol observes, it would be required to defend and indemnify Osyka if his actions were taken in the scope of his employment with Indel and were covered by the insurance policy. Thus, the Court must determine Capitol's duties regarding this claim.

The factual basis for this claim is the allegation that Osyka took proprietary and trade secret information from ICS and used it for the benefit of Indel. Even if such actions were to constitute an advertising injury, coverage would not exist for this claim. First, this claim, like the tortious interference claim, arises out of the infringement of trade secrets and, therefore, is specifically excluded by the infringement of trade secrets exclusion. Moreover, the policy specifically excludes coverage of injuries arising out of a breach of contract. Therefore, there can be no coverage of the breach of contract claim in the underlying complaint.

The final cause of action is for violation of KRS § 365.880, which prohibits the misappropriation of trade secrets. As all of the facts creating this cause of action are identical to the claim for tortious interference with business relationships, the analysis of insurance coverage is the same. Therefore, this claim too is excluded from coverage by the infringement of trade secrets exclusion.

The Court will issue an order consistent with this Memorandum Opinion.

cc: Counsel of Record